UNITED STATES DISTRICT

COURT DISTRICT OF OREGON

EUGENE DIVISION

SHANNON S.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:22-cv-01851-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Shannon S. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, that decision is AFFIRMED.

    Plaintiff protectively filed an application for DIB on March 30, 2019, alleging a disability onset date of August 22, 2011. Tr. 13, 179, 182. The Commissioner denied plaintiff's claim on July 17, 2019, and again upon reconsideration on March 16, 2021. Tr. 13, 48, 90. Plaintiff filed a written request for a hearing on April 26, 2021, and a hearing was held before Administrative

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of plaintiff's last name.

1 – OPINION AND ORDER

Law Judge ("ALJ") John D. Sullivan on October 20, 2021. Tr. 28–47. The ALJ issued a decision finding plaintiff was not disabled within the meaning of the Act at any time from August 22, 2011, through December 31, 2016. Tr. 10–22. The Appeals Council denied plaintiff's request for review on September 28, 2022. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 22, 2011, through her date last insured (DLI), December 31, 2016. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: major depression, bulimia nervosa, and posttraumatic stress disorder (PTSD). Tr. 15.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ then assessed plaintiff's residual functional capacity ("RFC") and determined that, through her DLI, plaintiff had the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations:

> [plaintiff] could not climb ladders, ropes, or scaffolds. She could occasionally balance. [Plaintiff] should not have worked at unprotected heights or have been exposed to moving mechanical parts, nor could have operated a motor vehicle. [Plaintiff] could perform simple, routine tasks requiring a reasoning level of two or less and make simple work-related decisions. She could interact occasionally with coworkers, supervisors, and the public. [Plaintiff] would have been off task for five percent of her worktime scattered throughout the workday. She needed to have ready access to a restroom or be able to perform her work while wearing an adult sanitary garment.

Tr. 18.

At step four, the ALJ found plaintiff was unable to perform any past relevant work through her DLI. Tr. 21. However, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded there were jobs that existed in significant numbers in the national economy that plaintiff could have performed, including merchandise marker, package sorter, and

routine clerk. Tr. 21-22. Thus, the ALJ concluded plaintiff was not disabled at any time from August 22, 2011, through December 31, 2016. Tr. 22.

## DISCUSSION

Plaintiff contends the ALJ erred in (1) discounting her subjective symptom testimony and (2) rejecting the testimony of treating psychiatrist, William Salbador, MD. Alternatively, plaintiff claims the ALJ must further develop the record to resolve ambiguities.

### I.  Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not

engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

5 – OPINION AND ORDER

Plaintiff testified that during the relevant timeframe, August 22, 2011, through December 31, 2016, she suffered from major depression. Tr. 38. Plaintiff testified that she left her last job because she was "having difficulties staying on task," and that she had been "disciplined for being late multiple times." Tr. 36. She felt she was "no longer able to do [her] job duties to the best of [her] abilities" and therefore left work. Tr. 36. Plaintiff stated she would "do nothing and [] would stay in bed most of the day." Tr. 38. Plaintiff also had panic attacks. Tr. 38. She "did not want to be around people or children," and would have her friends pick up her son and take him to school. Tr. 38. Plaintiff felt unable to get out of bed most of the day "probably 15 and 20" days a month. Tr. 38. Plaintiff experienced memory problems during the relevant timeframe, including that she "would forget to put snacks in [her] kids' backpacks, [and] forgot doctors' appointments." Tr. 39.

The ALJ concluded plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Tr. 18. However, the ALJ rejected plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms because they were not entirely consistent with the medical evidence and other evidence in the record. Tr. 19.

Specifically, the ALJ concluded plaintiff's symptom testimony was inconsistent with her medical care, which was "limited to medication prescribed by her primary care provider" with "no evidence of acute episodes requiring urgent/emergent, inpatient, intensive, or residential treatment." Tr. 19. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ's conclusions are supported by the record. Between October 26, 2011, and December 31, 2016, plaintiff had seven appointments related to her alleged disabling symptoms, all consisting of routine medication management. *See* Tr. 1070, 1065, 1051, 1049, 1029, 1025,

1003. On July 10, 2012, plaintiff declined her doctor's recommendation to adjust her Wellbutrin dosage, reporting "no additional stresses in her life at this time" and that "she is feeling well." Tr. 1065. On January 22, 2013, plaintiff was prescribed trazodone for sleep, but was advised to reduce her sertraline from 200mg to 150mg per day. Tr. 1049. On May 6, 2014, plaintiff's doctor noted that plaintiff had not reduced her sertraline as she had been directed, and she was diagnosed with selective serotonin reuptake inhibitor poisoning. Tr. 1031. Plaintiff's doctor then reduced her sertraline, and her medications remained stable through her DLI. Tr. 1029, 1025, 1003, 998, 978, 963, 1339.

During the relevant timeframe, there are no psychological counseling treatment observations. Nor are there any indications that plaintiff sought mental health treatment services beyond medication management. The ALJ relied on clinical observations from plaintiff's medical providers, which consistently indicated normal affect, thought content, and behavior, as well as grossly normal short-term memory and no decreased concentration Tr. 19, 965, 1026, 1030, 1046, 1051, 1057, 1334. Additionally, no disabling limitations stemming from plaintiff's symptoms are identified throughout her relevant treatment records. Accordingly, the ALJ reasonably concluded that plaintiff's symptoms were not as severe as alleged.

Plaintiff contends the ALJ erred by failing to specifically address her testimony that she stayed in bed 15-20 days a month due to depression, that working a normal schedule caused more stress, and that she would lash out at people when working just prior to the onset of her disability. Pl. Br. 12 (citing Tr. 38, 41). However, the ALJ is not required to explicitly mention every line of a plaintiff's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (Our cases do not require ALJ's to perform a line-by-line exegesis of the claimant's testimony. . . ."). In this case, the ALJ discussed plaintiff's specific testimony regarding her depression, anxiety,

irritability, and focus and memory problems, and concluded her symptoms were not as severe as alleged. Tr. 17-19. Plaintiff next argues the ALJ failed to "explain what <u>evidence undermines that aforementioned testimony</u>." Pl. Br. 13 (emphases in original). However, the ALJ provided sufficient discussion of the evidence he found to be inconsistent with plaintiff's testimony, specifically citing the records that supported his conclusions. Therefore, the ALJ did not err in assessing plaintiff's symptom testimony.

## II.     Medical Opinion

Plaintiff contends the ALJ erred in rejecting the medical opinion of treating psychiatrist, William Salbador, MD. Pl. Br. 5. When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. § 404.1520c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . .

8 – OPINION AND ORDER

objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

9 – OPINION AND ORDER

The ALJ found Dr. Salbador's opinion unpersuasive in part because he began treating plaintiff in February 2017, after plaintiff's DLI. The ALJ thus concluded the significant limitations opined in Dr. Salbador's letter were "not supported by his treatment notes from the period relevant to this decision." Tr. 19. Additionally, the ALJ noted Dr. Salbador's opinion was inconsistent with evidence documenting "only conservative outpatient treatment during the relevant period consisting of medication prescribed by the [plaintiff's] primary care provider." Tr. 19.

Plaintiff first argues the ALJ improperly rejected Dr. Salbador's opinion on the basis of timing. Pl. Br. 7. In support, plaintiff points to Dr. Salbador's checkbox affirmative response in response to the question of whether plaintiff's limitations had been present from at least December 31, 2016. Pl. Br. 7; Tr. 2143. However, the date proffered is neither significant nor probative because it conflicts with Dr. Salbador's statements within the same opinion. *Vincent ex rel Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding a controverted medical opinion evidence was neither significant nor probative). For example, when asked how long plaintiff's limitations had been present, Dr. Salbador replied "unknown." Tr. 2141. When asked to explain why he believed plaintiff's limitations had been present since January 31, 2016, Dr. Salbador stated plaintiff's "symptoms have been present and have limited her functioning since early 2017. Per history they had already been present for several months before that." Tr. 2143. To be clear, if Dr. Salbador's analysis of plaintiff's medical history is based on a review of her relevant medical records, as plaintiff proposes, then the ALJ properly disregarded this evidence because plaintiff's relevant medical history contains only records of medication management, with no counseling, no acute episodes, and no record of any symptom-related limitations. If, as the Commissioner proposes, Dr. Salbador's analysis is based on plaintiff's self-reported

symptoms, then the ALJ properly disregarded this evidence because he had properly rejected plaintiff's symptom testimony. Def. Br. 7. Either way, the ALJ's interpretation of Dr. Salbador's opinion regarding plaintiff's limitations was reasonable.

Next, plaintiff states that "medical evaluations made after a DLI can be relevant when evaluating pre-existing conditions." Pl. Br. 7 (citing *Smith v. Bowen*, 849 F.2d 1222, 1225-1226 (9th Cir. 1988)). Plaintiff is correct that courts have found error where rejected medical opinions contain uncontroverted evidence of an existing medical impairment prior to a plaintiff's DLI. *See Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985) (holding ALJ's rejection of an uncontroverted medical opinion that is rendered retrospectively, without providing clear and convincing reasons, is reversible error). However, as discussed above, Dr. Salbador's opinion is not uncontroverted—it is self-contradicting. Therefore, the ALJ was entitled to discount Dr. Salbador's opinion. *See Vincent ex rel*, 739 F.2d at 1395.

Finally, plaintiff contends the ALJ failed to provide a legally sufficient supportability analysis, arguing that "[s]upportability is clearly defined in 20 C.F.R. 1520c (c) (1),[2] which clearly and on its face indicates the supportability factor relates to the <u>*supporting explanations presented by a medical source*</u>, <u>to support his or her</u> opinion." Pl. Br. 8 (emphases in original). Plaintiff then asserts "[t]he ALJ misses compliance with this full definition," and ignored the supporting explanations provided by Dr. Salbador—such as limitations due to depression, anxiety, low energy, and irritabiilty—and focused instead on "treatment notes that are not even mentioned in the definition." *Id*.

---

[2] Plaintiff's incorrect citation has been left as is. However, the correct citation is 20 C.F.R. § 404.1520c(c)(1).

The supportability analysis guideline states "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The ALJ did not ignore Dr. Salbador's supporting explanations—the ALJ recited them in his decision and then explained why Dr. Salbador's explanations were unpersuasive, including that Dr. Salbador did not begin treating plaintiff until February 2017 and the limitations described by Dr. Salbador are not consistent with prior treatment records that show "only conservative treatment during the relevant period." As such, the ALJ did not err in finding Dr. Salbador unpersuasive.

### III. Duty to develop the record

Finally, plaintiff asks the court to remand the case "to have the ALJ further develop the record as to any ambiguous evidence, or further develop the record in any area where the record is inadequate to allow for a proper evaluation of the evidence." Pl. Br. 17. An ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Smolen*, 80 F.3d at 1288). However, "[the] duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan,* 242 F.3d at 1150). Such is not the case here as the record is neither ambiguous, nor is it inadequate. Indeed, the record shows plaintiff received conservative treatment for her symptoms consisting of medication management, and no records from the relevant timeframe attest to any limitations resulting from her symptoms. Thus, the ALJ's decision is supported by substantial evidence and there is no need to remand for further development of the record.

## ORDER

Based on the foregoing, the Commissioner's decision is AFFIRMED.

DATED February 28, 2024.

                                                 /s/ Youlee Yim You
                                                 Youlee Yim You
                                                 United States Magistrate Judge